## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

-----------------------------------------------------X

Laurie Aubrey and Lawrence Aubrey,                    Civil Case No. 13-cv-11165

     Plaintiffs,                                            **COMPLAINT**

        v.

Specialized Loan Servicing, LLC,

     Defendant.

-----------------------------------------------------X

### PRELIMINARY STATEMENT

1.     This action arises from Defendant's unlawful debt collection practices.

Defendant is a mortgage loan servicer.  Defendant has attempted to collect allegedly past due

mortgage payments from Plaintiffs despite failing to validate the debt.  Defendant has repeatedly

threatened to unlawfully foreclose upon Plaintiffs' home.  Defendant has continued to abuse and

harass Plaintiffs directly despite requests that it communicate only with their attorney.

Defendant has ignored repeated warnings that its conduct is unlawful.  Defendant's actions have

caused Plaintiffs to suffer severe emotional distress and other damages.  Plaintiffs now seek

redress for their injuries through the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et

seq.), Massachusetts Fair Debt Collection Practices Act (MGL c. 93, § 49), Massachusetts

Consumer Protection Law (MGL c. 93A), and claims for unlawful infliction of emotional

distress.

### JURISDICTION & VENUE

2.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1692k(d) and

28 U.S.C. §§ 1331, 1337(a).  The Court has jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367.

3.      Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §§ 1391(b)(1), (2).

## PARTIES

4.      Plaintiffs are married natural persons.  They reside at 80 Pondview Drive, Chicopee, MA 01020 (hereafter "property").

5.      Defendant Specialized Loan Servicing, LLC is a foreign limited liability company organized under Delaware law.  Defendant's principal place of business is 8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129.

6.      Defendant conducts substantial business within the Commonwealth of Massachusetts.  Defendant's registered resident agent is located at 10 Milk Street, Suite 1055, Boston, MA 02108.

7.      Defendant is a residential mortgage loan servicer.  The principal purpose of Defendant's business is to collect mortgage payments from homeowners for banks and other third parties.  Upon information and belief, Defendant regularly collects, or attempts to collect, payments on loans that were in default at the time it acquired servicing rights.

8.      Defendant is licensed as a debt collector in the Commonwealth.

9.      As further described below, Defendant has serviced Plaintiffs' mortgage loan since December 2011.

## FACTUAL ALLEGATIONS

10.      On November 15, 2002, Plaintiffs acquired a $105,600.00 loan from Countrywide Home Loans Inc. (hereafter "Countrywide").  Plaintiffs used this money to purchase the property.

11.     On June 15, 2007, Plaintiffs refinanced with a new $133,680.00 loan from Countrywide.  Plaintiffs used this money to pay off the November 2002 loan and other household expenses.

12.     The June 2007 loan (hereafter "mortgage") was evidenced by a promissory note and secured by a mortgage on the property.  The mortgage granted the "Lender" (Countrywide) the Statutory Power of Sale.

13.     Plaintiffs were obligated to repay the mortgage in 360 regular, monthly installments beginning on July 1, 2007.

14.     On December 16, 2011, Defendant acquired the right to service Plaintiffs' mortgage loan.  Defendant immediately began attempting to collect payments from Plaintiffs.

15.     Plaintiffs' mortgage was in default at the time Defendant acquired servicing rights.

16.     As of December 16, 2011, Plaintiffs were allegedly $3,923.13 behind on their mortgage.  All of this money was allegedly more than 30 days past due.

17.     Beginning on December 26, 2011, and continuing each month thereafter, Defendant sent Plaintiff a "Monthly Mortgage Statement."  Each Statement contained a demand for payment of "Past Due Payments" and "Outstanding Late Charges/Fees."  The Statements additionally included the following "Important Message": "For your protection, please be advised that we are attempting to collect a debt and any information obtained will be used for that purpose."

18.     On, or about, January 27, 2012, Defendant sent Plaintiff a letter titled "Notice of Default and Notice of Intent to Foreclose."  The Notice falsely identified Defendant as the "current creditor to whom the [mortgage] debt is owed."  The Notice also stated, in relevant part,

as follows: Plaintiffs had defaulted on their mortgage payments; Plaintiffs had 33 days to cure

their default; and, if Plaintiffs did not timely cure their default, Defendant would accelerate the

loan and foreclose upon the property.

19.     Upon information and belief, Defendant has never held the mortgage or note.

Defendant was not the "Lender," as defined in the mortgage, or "mortgagee," as defined at MGL

c. 183, § 21 et al.  Defendant lacked authority to accelerate the loan or foreclose upon the

property.

20.     MGL c. 244, § 35A (hereafter "Section 35A") provides, in relevant part, as

follows:

> A mortgagor of residential property shall have a 150-day right to cure a default of a
> required payment…The right to cure a default of a required payment shall be granted
> once during any 3 year period, regardless of mortgage holder.
>
> …The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the
> unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of
> a default consisting of the mortgagor's failure to make any such payment…by any
> method authorized by this chapter or any other law until at least 150 days after the date a
> written notice is given by the mortgagee to the mortgagor…

21.     During the three year period prior to January 27, 2012, Plaintiffs had not been

granted an opportunity to cure a default under Section 35A.

22.     Plaintiffs are unsophisticated consumers and are particularly vulnerable to undue

pressure and influence.  Plaintiffs were distressed by Defendant's threat to take their home in just

over a month (33 days).

23.     Upon receiving the Notice of Default, Plaintiffs determined that they would be

unable to adequately protect their interests or deal with the stress of the situation.  Plaintiffs

elected to retain an attorney.

24.     On February 1, 2012, Plaintiffs orally notified Defendant that they were

represented by Community Legal Aid (hereafter "attorney").  Plaintiffs provided Defendant with

4

their attorney's contact information, and requested that all further communications concerning the debt be directed to that attorney. On February 8, 2012, Defendant confirmed in writing that it knew Plaintiff was represented by an attorney, and that it had the attorney's contact information.

25.     Subsequent to February 1, 2012, Defendant continued to directly communicate with Plaintiffs concerning the debt. These communications included, but were not limited to, telephone conversations that occurred approximately once a month; the "Monthly Mortgage Statements" demanding "Past Due Payments" described above; and the additional written communications discussed below.

26.     On February 17, 2012, Plaintiffs' attorney notified Defendant in writing that Plaintiffs were represented and disputed the debt. The letter additionally informed Defendant that its threat to foreclose in 33 days violated Massachusetts law, and demanded that Defendant stop making the threat.

27.     On, or about, February 23, 2012, Defendant sent Plaintiffs a second Notice of Default. Other than the dates and amounts alleged due, the Notice was identical to the Notice dated January 27, 2012.

28.     On, or about, March 6, 2012, Plaintiffs (through their attorney) submitted a Home Affordable Modification Program (HAMP) application to Defendant. Plaintiffs hoped to obtain a modification that would allow them to stave off Defendant's threats of foreclosure.

29.     On April 4, 2012, Defendant sent Plaintiffs' attorney a letter that, among other things, purported to validate the debt. Defendant failed to provide information that verified that Plaintiffs owed any money to the "current creditor" – or any other party.

30.     The April 4th letter:

a.  Acknowledged that the January 27th and February 23rd Notices violated Massachusetts law;

b.  Stated that a "MA 150 day state notice" would be sent to Plaintiffs "within the next week";

c.  Stated that Defendant would not attempt to foreclose until after the "MA 150 day state notice" had been sent – and the cure period had expired;

d.  Identified the "Current Creditor" as  "CWABS 2007-10";

e.  Included copies of:

   i.   An unsigned, unindorsed promissory note made out in favor of Countrywide;

   ii.  An unsigned mortgage with Countrywide; and

f.  Stated that no "foreclosure action" would be taken until Defendant had acquired the "original wet-ink signed documents."

31.  Plaintiffs received no further validation materials from Defendant.  Upon information and belief, Defendant never acquired the "original wet-ink" copies of the mortgage and note.

32.  Plaintiffs never received a "MA 150 day state notice" from Defendant.

33.  On August 8, 2012, Defendant sent Plaintiffs a letter in which it invited them to apply for "a new modification program."  The letter included the following language: "If you are represented by an attorney, we must speak with your attorney or have your attorney's permission to speak with you about this program…"

34.  Defendant subsequently, and without permission, communicated directly with Plaintiffs over the telephone concerning this offer.  Defendant induced Plaintiffs to abandon their

HAMP application and submit a new application for the "new modification program." Defendant falsely represented to Plaintiffs that they had to submit an application for the "new modification program" if they wanted to modify their mortgage.

35.      Upon information and belief, Plaintiffs would have been considered for the "new modification program" in connection with their existing HAMP application.  There was no need for Plaintiffs to abandon their HAMP application and submit a new application.

36.      Upon information and belief, Plaintiffs' submission of a new application complicated and delayed Defendant's consideration of their eligibility for both HAMP and the "new modification program."

37.      Upon information and belief, Defendant encouraged Plaintiffs to file a new application in order to delay and frustrate their attempts to modify their mortgage and avoid foreclosure.  Defendant contacted Plaintiffs directly, rather than their attorney, in order to facilitate this objective.

38.      Subsequent to August 8, 2012, Defendant informed Plaintiffs that there was "no timeline" for evaluating their application under the "new modification program."

39.      On October 16, 2012, Plaintiffs (through their attorney) sent Defendant a demand for relief pursuant to MGL c. 93A, § 9(3) ("hereafter 93A Letter") by certified mail.  The 93A Letter detailed the unlawful conduct discussed above; repeated that Plaintiff's were represented by an attorney; and instructed Defendant that continuing to communicate directly with them was unlawful.

40.      Defendant received the 93A Letter on October 19, 2012.

41.      Defendant failed to offer Plaintiffs any relief in response to the 93A Letter.

42.     On October 21 and November 29, 2012, Defendant sent Plaintiffs additional Notices of Default.  Other than the dates and amounts alleged due, these Notices were identical to the January 27th Notice.  Defendant sent the October 21st and November 29th Notices by certified mail.

43.     Defendant's unlawful threats and conduct caused Plaintiffs to suffer severe emotional distress.  Defendant unjustifiably placed Plaintiffs in fear that they would lose their home and become homeless.  Plaintiffs lived in a state of despair punctuated by periods of intense panic brought on by the Notices of Default.  Plaintiffs' distress manifested itself in ways that included, but were not limited to, the following: headaches, sleeplessness, and weeping.

44.     Plaintiffs have retained an attorney to represent them in this matter.

## CLAIMS

## Violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) ("FDCPA")[1]:

45.     Defendant intentionally and repeatedly engaged in unlawful debt collection practices in violation of the FDCPA.

46.     Plaintiffs are consumers as defined at 15 U.S.C. § 1692a(3).

47.     Plaintiffs' mortgage loan is a debt as defined at 15 U.S.C. § 1692a(5).

48.     Defendant is a debt collector as defined at 15 U.S.C. § 1692a(6).

49.     Plaintiffs are entitled to an award of costs, attorney's fees, and damages in an amount to be determined by the Court.

### First Claim – Unlawful Communication with Debtor
### Violations of 15 U.S.C. § 1692c(a)(2)

50.     Plaintiffs repeat paragraphs 1 – 49.

---

[1] Plaintiffs' claims under the FDCPA, and MFDCPA below, seek relief only for conduct that occurred within 1 year of the date on which this action was commenced.  All other information is for background purposes only.

51.     On February 1 and 17, 2012, Plaintiffs notified Defendant that they were represented by an attorney.  Plaintiffs instructed Defendant that all communications concerning the debt should be directed to their attorney.  Plaintiffs provided Defendant with their attorney's contact information.

52.     Subsequent to February 17, 2012, Defendant continued to communicate directly with Plaintiffs concerning the debt.

### Second Claim – Harassment & Abuse
### Violations of 15 U.S.C. § 1692(d)

53.     Plaintiffs repeat paragraphs 1 – 52.

54.     Defendant engaged in conduct the natural consequence of which was to harass, oppress, and abuse Plaintiffs.

55.     Defendant repeatedly threatened to unlawfully foreclose upon Plaintiffs' home.

56.     Defendant continued to directly threaten Plaintiffs after they requested it communicate only with their attorney.  After Plaintiffs made their third such request in October 2012, Defendant began sending foreclosure-threats by certified mail.  Upon information and belief, Defendant took this step for the sole purpose of intimidating and harassing Plaintiffs.

57.     Defendant continued to make foreclosure-threats after Plaintiffs provided notice that the threats violated Massachusetts law.

58.     Defendant continued to make foreclosure-threats after admitting it knew it was violating Massachusetts law.

### Third Claim – False & Misleading Representations
### Violations of 15 U.S.C. §§ 1692e(2), (5), (10), and (11)

59.     Plaintiffs repeat paragraphs 1 – 58.

60.     Defendant made false, deceptive, and/or misleading representations in connection with the collection of the debt.  Defendant's unlawful conduct included, but was not limited to, that set forth below.

61.     Defendant falsely represented to Plaintiffs that it was the "current creditor to whom the debt is owed."

62.     Defendant falsely represented to Plaintiffs that it – acting for itself – could accelerate the loan and foreclose upon the property.  Defendant had no such authority under the terms of the mortgage or Massachusetts law.

63.     Defendant represented to Plaintiffs that it could accelerate the loan and foreclose in a manner prohibited by Section 35A.

64.     Defendant unlawfully and deceptively induced Plaintiff to apply for the "new modification program."  Defendant took this action to frustrate Plaintiffs' attempts to modify their mortgage and avoid foreclosure.

### Fourth Claim – Unfair Practices
### Violations of 15 U.S.C. § 1692(f)(6)

65.     Plaintiffs repeat paragraphs 1 – 64.

66.     Defendant used unfair and unconscionable means to attempt to collect the debt. Defendant's unlawful conduct included, but was not limited to, that set forth below.

67.     Defendant threatened to foreclose upon, and dispossess Plaintiffs of, the property if they did not pay the disputed debt.

68.     Defendant had no present right to foreclose upon the property under the terms of the mortgage or Massachusetts law.

69.     Defendant had no present intent to foreclose upon the property.

**Fifth Claim – Attempts to Collect After Failure to Validate Debt**
**Violations of 15 U.S.C. § 1692(g)(b)**

70.     Plaintiffs repeat paragraphs 1 – 69.

71.     On February 17, 2012, Plaintiffs notified Defendant that they disputed the debt.

72.     Defendant failed to properly validate the debt.

73.     Defendant continued to attempt to collect the debt by taking actions that included, but were not limited to, the following: sending Monthly Statements demanding payment; sending the August 2012 modification offer; and sending the October and November 2012 Notices of Default.

**Violations of the Massachusetts Fair Debt Collection Practices Act (MGL c. 93, § 49 et seq.; 209 CMR § 18 et seq.; 940 CMR § 7 et seq.) ("MFDCPA"):**

74.     Plaintiffs repeat paragraphs 1 – 73.

75.     Defendant intentionally and repeatedly engaged in unlawful debt collection practices in violation of the MFDCPA.

76.     Plaintiffs are debtors as defined at MGL c. 94, § 49 and 940 CMR § 7.03.

77.     Plaintiffs' mortgage is a debt as defined at MGL c. 94, § 49; 209 CMR § 18.02; and 940 CMR § 7.03.

78.     Defendant is a creditor as defined at MGL c. 94, § 49 and 940 CMR § 7.03.

79.     Defendant is debt collector as defined at 209 CMR § 18.02.

80.     Plaintiffs are entitled to an award of damages in an amount to be determined by the Court.

**Sixth Claim – Unlawful Communication with Debtor**
**Violations of MGL c. 93, § 49(b); 209 CMR § 18.14(1)(b); and 940 CMR § 7.04(2)**

81.     Plaintiffs repeat paragraphs 50 – 52.

**Seventh Claim – Harassment & Abuse**
**Violations of MGL c. 93, § 49(c) and 209 CMR § 18.15**

82.     Plaintiffs repeat paragraphs 53 – 58.

83.     Plaintiffs additionally allege that, in the ordinary course of its business, Defendant does not in fact foreclose, or attempt to foreclose, upon Massachusetts homeowners after the expiration of a 33 day cure period.

**Eighth Claim – Unlawful Communications & Unfair Acts**
**Violations of MGL c. 93, § 49; 209 CMR §§ 18.16(2), (5), and (10); and 940 CMR §§ 7.04(1)(b)(3), 7.04(1)(m), and 7.07(2) and (8)**

84.     Plaintiffs repeat paragraphs 59 - 64.

**Ninth Claim – Unfair Acts**
**Violations of MGL c. 93, § 49; 209 CMR § 18.17(6); and 940 CMR § 7.07(18)**

85.     Plaintiffs repeat paragraphs 65 – 69.

**Tenth Claim – Failure to Validate Debt**
**Violations of MGL c. 93, § 49; 209 CMR §§ 18.18(2)-(3); and 940 CMR § 7.08(2)**

86.     Plaintiffs repeat paragraphs 70 – 73.

**Infliction of Emotional Distress**:

**Eleventh Claim – Intentional or Reckless Infliction of Emotional Distress**

87.     Plaintiffs repeat paragraphs 1 – 86.

88.     Defendant knowingly, intentionally, and repeatedly threatened to unlawfully foreclose upon Plaintiffs' home.  Defendant made these threats to intimidate, abuse, and harass Plaintiffs.

89.     Defendant knowingly, intentionally, and unlawfully communicated directly with Plaintiffs for the purpose of frustrating their attempts to modify their mortgage and prevent foreclosure.

90.     Defendant's outrageous and unlawful conduct caused Plaintiffs to suffer severe emotional distress.

91.     Plaintiffs are entitled to an award of damages in an amount to be determined by the Court.

**Violations of the Consumer Protection Law (MGL c. 93A):**

**Twelfth Claim – Violations of MGL c. 93A, § 2**

92.     Plaintiffs repeat paragraphs 1 – 91.

93.     Defendant knowingly and intentionally engaged in unfair and deceptive business practices.

94.     Plaintiffs and Defendant are persons as defined at MGL c. 93A, § 1(a).

95.     Defendant is engaged in the conduct of trade and commerce within the Commonwealth.

96.     Plaintiffs have been injured by Defendants' unlawful conduct.

97.     Plaintiffs are entitled to an award of treble damages, costs and attorney's fees, and injunctive relief.

**WHEREFORE**, Plaintiffs respectfully request that the Court issue an order and judgment:

(i)     On their FIRST through FIFTH claims, awarding Plaintiffs:

    a.   Damages in an amount to be determined by the Court; and

    b.   Costs and attorney's fees.

(ii)    On their SIXTH through TENTH claims, awarding Plaintiffs damages in an amount to be determined by the court.

(iii)   On their ELEVENTH claim, awarding Plaintiffs damages in an amount to be determined by the Court;

    (iv)     On their TWELFTH claim, awarding Plaintiffs:

          a.  Treble damages in an amount to be determined by the Court;

          b.  Costs and attorney's fees;

          c.  Injunctive relief barring Defendant from engaging in further unfair, deceptive, or otherwise unlawful conduct;

    (v)      Granting Plaintiffs such additional relief as the Court may deem necessary or proper.

Dated: May 9, 2013
        Worcester, MA


/s/ Jon Burke_____
Attorney for Plaintiffs
Community Legal Aid

By:
Jon Burke, Esq.
BBO# 673472
405 Main Street
Worcester, MA 01608
Phone: 508.752.5918
Email: jburke@cla-ma.org
Fax: 508.752.5918